<u>NOT FOR PUBLICATION</u>                                      [Docket No. 16]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| LEE J. HORNUNG,<br><br>         Plaintiff,<br><br>     v.<br><br>WEYERHAEUSER COMPANY, INC.,<br>ABC COMPANIES 1-5, and JOHN<br>DOE(S) I-X<br><br>         Defendants. | Civil No. 06-CV-2300 (RMB)<br><br>**OPINION** |

APPEARANCES:

Gary F. Piserchia
Damen J. Thiel
Parker McCay P.A.
7001 Lincoln Drive West
Three Greentree Centre, Suite 401
Route 73 & Greentree Road
Marlton, NJ 08053
         Attorneys for Plaintiff

Kimberly E. Lunetta
Richard G. Rosenblatt
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, NJ 08540
         Attorneys for Defendant Weyerhaeuser Company


**BUMB**, United States District Judge:

**INTRODUCTION:**

      This matter comes before the Court upon a motion for summary

judgment by Defendant, Weyerhaeuser Company.  This Court will briefly set forth the facts pertinent to this motion and then discuss the motion.

**FACTUAL BACKGROUND:**[1]

This case arises out of a series of events that took place over the course of more than a decade.  Plaintiff first began working for Defendant on December 10, 1984, as a Sales Representative, working at Weyerhaeuser's Barrington, New Jersey facility.  (Parties' SOF at ¶1).  After four to five years, Plaintiff was transferred to Weyerhaeuser's Three Rivers facility in Michigan, in the position of Sales Manager.  (Id. at ¶2).

In or about July 1993, Plaintiff came to believe that his direct supervisor, Richard Cameron purchased products from Cameron's son that Weyerhaeuser did not need at inflated prices.  (Id. at ¶3).  Plaintiff alleges that he was being forced to sign checks that he should not have been signing because they were allegedly improper expenditures; he further alleges that he was concerned about fraudulent expense reports and misuse of defendant's corporate funds and property for personal gain by Cameron and others at the company.  (Pl. SOF at ¶3).  In August

---

[1] The facts are derived from the parties' Rule 56.1 Statements of Fact ("SOF"), their exhibits and their motion papers and are set forth in a light most favorable to the Plaintiff.

1993, Plaintiff complained to Cameron about Cameron's conduct. (Parties' SOF at ¶4). Defendant claims that Plaintiff's complaints were limited to his concern that Cameron's conduct was in violation of Weyerhaeuser's internal policy regarding conflicts of interest. (Def. SOF at ¶4). Plaintiff alleges that he complained that Cameron's conduct was fraudulent and a misuse of corporate funds. (Pl. SOF at ¶4).

In September and October 1993, Plaintiff, on multiple occasions, reported Cameron's conduct to the Defendant's company Ethics Committee hotline. (Parties' SOF at ¶5). Again, the parties disagree as to the content of those complaints – Defendant argues that the complaints were limited to a violation of the conflict of interest policy and Plaintiff claims the complaints concerned fraudulent behavior and misuse of corporate funds. (Parties' SOF at ¶6).

On April 28, 1994, Plaintiff was notified that his employment at Weyerhaeuser's Three Rivers facility was being terminated. (Parties' SOF at ¶7). Plaintiff was paid a salary by Weyerhaeuser through June 28, 1994. (Parties' SOF at ¶8). On August 19, 1994, Plaintiff filed his first lawsuit against the Defendant, alleging that he was discharged in retaliation for his complaints to Weyerhaeuser's ethics committee, in violation of public policy. (Parties' SOF at ¶9). Once again, the parties disagree as to the basis of the complaints underlying Plaintiff's

lawsuit.  Defendants claim that Plaintiff's 1994 retaliatory discharge claim against Weyerhaeuser was based solely on his alleged complaints of unethical conduct by Cameron.  (Def. SOF at ¶10).  Plaintiff claims that the lawsuit also involved complaints concerning fraudulent corporate expenditures, funds, expense reports, and use of corporate property.  (Pl. SOF at ¶10).  The Michigan court granted Weyerhaeuser's motion for summary judgment on Plaintiff's public policy claim.  (Parties' SOF at ¶11).  On or about November 12, 1996, Plaintiff executed a Settlement Agreement and General Release, thereby releasing all claims in favor of Weyerhaeuser.  (Id. at ¶12).

On or about February 21, 1995, Plaintiff began his employment with Willamette Industries at the Willamette Bellmawr, New Jersey facility.  (Id. at ¶¶13-14).  In March 2002, Weyerhaeuser acquired Willamette Industries and, thereafter, Plaintiff accepted a position as Sales Manager of the Bellmawr Sales group.  (Id. at ¶¶15-16).  In May 2005, Plaintiff was advised that he was to be terminated and on July 3, 2005, Weyerhaeuser terminated Plaintiff's employment.  (Parties' SOF at ¶17).

Plaintiff filed the current lawsuit against Weyerhaeuser on April 22, 2006, alleging, inter alia, that "in March 2002, certain Weyerhaeuser employees/personnel advised others that they planned or desired to fire and/or refuse to promote plaintiff

4

because he had filed/made legal/ethical complaints against defendant and/or employees of defendant during plaintiff's previous period of employment, had been terminated, and had filed a lawsuit against defendant." (Parties' SOF at ¶18; Pl. Compl. at ¶12). Specifically, Plaintiff asserts the following claims in his complaint: Count I is a claim for wrongful discharge in violation of New Jersey's Conscientious Employee Protection Act (CEPA); Count II is a claim for wrongful discharge in violation of public policy; Count III is a claim for breach of contract and breach of the covenant of good faith and fair dealing; Counts IV-VII relate to damages. (Pl. Compl. at ¶¶24-49).

**APPLICABLE STANDARD:**

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. See id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. See id. "In making this determination, a court must make all

reasonable inferences in favor of the non-movant." Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D. N.J. 1990) (citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)). "At the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**DISCUSSION:**

**1) CEPA Claim**

In Count I of his complaint, Plaintiff alleges retaliatory discharge in violation of the New Jersey Conscientious Employee Protection Act ("CEPA") (Pl. Compl. at 5). CEPA provides, in relevant part:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer...that the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care; or
>
> (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any

>
> shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity;
>
> ...
>
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law...
>
> (2) is fraudulent or criminal...or
>
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. 34:19-3 (Sections 3a, 3c).

In its motion for summary judgment, Defendant argues that Plaintiff cannot prove that he engaged in any "protected activity" as required to establish a claim under CEPA. (Def. Motion at 1). The issue for the Court, therefore, is whether Plaintiff's actions constitute "protected activity" under the New Jersey CEPA. Plaintiff alleges that he was terminated in May 2005 because he "had disclosed and/or threatened to disclose activities, acts, and/or omissions of defendant and/or defendant's employees, which plaintiff reasonably believed to be in violation of law, and because plaintiff had thereafter filed a civil action against defendant." (Pl. Compl. at ¶16). Thus, Plaintiff points to two separate forms of protected activity as the basis for his CEPA claim: (1) his 1993 complaints concerning

his employer's conduct, and (2) his 1994 CEPA lawsuit against his employer.

### *a) Plaintiff's 1993 Complaints Concerning His Employer's Conduct*

In its motion for summary judgment, Defendant argues that Plaintiff's 1993 complaints concerned a "purely internal matter, which [Plaintiff] repeatedly referred to as a 'conflict of interest.'"  (Def. Motion at 8).  As such, Defendant reasons, Plaintiff's complaints did not concern activity that was in violation of law, fraudulent or criminal, or against public policy and cannot be considered protected activity under CEPA. (Id.)  While this legal reasoning may be correct, Defendant rests its argument on the allegations (and resulting findings) in Plaintiff's 1994 CEPA lawsuit, filed in the State of Michigan. Indeed, Defendant's motion specifically states, "...Plaintiff's allegation that underpinned his prior lawsuit, did not constitute CEPA-protected activity."  (Id.)  In that prior lawsuit, Plaintiff alleged he was terminated "in retaliation for [] reporting on the conflict of interest rules violations to the Ethics Committee."  (See Pl. 1994 Complaint, State of Michigan, 9th Circuit Court, County of Kalamazoo, Docket No. A9402432, attached as Def. Ex. 1, at ¶ 36).

Although Defendant focuses on the prior lawsuit, this Court must address the allegations of the case before it.  In his

earlier lawsuit, Plaintiff did not present any allegations that he believed there was criminal activity happening. In contrast, Plaintiff now alleges that at the time of his 1993 complaints, he "reasonably believed that defendant's conduct and/or defendant's employees' conduct violated the law." (Pl. Compl. at ¶13). Regardless of the reason(s) for the apparent inconsistency in Plaintiff's allegations in the two lawsuits, credibility issues are not properly resolved by the Court on summary judgment.

    Moreover, the determination of whether Plaintiff actually believed his supervisor was engaged in criminal activity at the time he reported the violations (as Plaintiff now alleges) is a question of material fact. While normally a party's allegations are insufficient to defeat a motion for summary judgment, this Court is mindful of the fact that the discovery process in this case is incomplete. Pursuant to the Joint Discovery Plan filed on July 6, 2006, fact discovery was to be completed by January 6, 2007; however, on December 21, 2006, discovery was stayed pending the outcome of Defendant's motion for summary judgment, filed on December 11, 2006. Given the incomplete discovery, the Court must allow Plaintiff the opportunity to develop the record on this issue. Accordingly, viewing the facts in the light most favorable to the non-moving party and in light of the fact that discovery is not yet complete, this Court cannot find that Plaintiff has failed to establish a CEPA claim.

### *b) Plaintiff's 1994 CEPA Lawsuit Against His Employer*

Because Plaintiff's 1993 complaints may constitute CEPA protected activity, Plaintiff's 1994 CEPA lawsuit based on that very same protected activity must also be granted the same status at this time. In opposition to this point, Defendants point to a recent case by the New Jersey Appellate Division in which the court held that a lawsuit, even one based on CEPA, cannot itself constitute protected activity. <u>Karimi v. Trenton Psychiatric Hosp.</u>, 2006 WL 1302245 (App. Div. May 12, 2006). The facts in <u>Karimi</u>, however, are distinguishable from the present case. In <u>Karimi</u>, the events underlying the plaintiff's first CEPA lawsuit were entirely separate from the events underlying the plaintiff's second CEPA lawsuit. The court specifically noted that the plaintiff "does not claim that his [activity underlying his first lawsuit] served as the basis for the present complaint." <u>Id.</u> at * 3. In this case, however, both of Plaintiff's CEPA lawsuits point to the same 1993 complaints concerning the employer's allegedly improper behavior.

Additionally, the Defendant's extension of <u>Karimi</u> to deny all prior lawsuits protected activity status would oppose the underlying goal of CEPA. As recognized by the New Jersey Supreme Court, "[t]he purpose of CEPA is to protect employees who report illegal or unethical work-place activities." <u>Roach v. TRW, Inc.</u>,

10

164 N.J. 598. 609-610 (2000) (citing Higgins v. Pascack Valley Hosp., 158 N.J. 404, 417 (1999)). "CEPA is supposed to encourage, not thwart, legitimate employee complaints." Id. at 610. If employees knew that reporting a violation could lead to retaliatory action by the employer, which could, in turn, lead to a lawsuit that would not be protected activity itself, employees would be severely disincentivized from reporting the violation in the first instance. For example, an employee reports a violation, the employer responds by demoting the employee, and the employee then brings a CEPA lawsuit. Following Defendant's reasoning, even if the employee prevails in the CEPA lawsuit, the employer could then turn around and terminate the employee without violating CEPA. He could simply argue that he was retaliating for the lawsuit, not the employee's underlying complaints of violation. This hypothetical is similar to the Plaintiff's situation. To allow a second round of retaliation to go unpunished would counteract the protection CEPA is intended to provide. In short, this Court believes that the New Jersey Legislature would not give with one hand, yet take away with the other.

For these reasons, Plaintiff's first CEPA lawsuit, which is predicated on the very same 1993 complaints that underlie Plaintiff's current suit, should be considered protected activity.

### *2) Remaining Common Law Claims*

The remaining substantive counts in Plaintiff's complaint (Counts II and III)[2] are based in common law. Defendant argues that the waiver provision in CEPA bars Plaintiff's further pursuit of those claims. The CEPA waiver provides that

> the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

N.J.S.A. 34:19-8. As held by the New Jersey Supreme Court, "the waiver provision applies only to those causes of action that require a finding of retaliatory conduct that is actionable under CEPA. The waiver exception does not apply to those causes of action that are substantially independent of the CEPA claim." Young v. Schering Corp., 141 N.J. 16, 29 (1995).

Applying this narrow interpretation of the CEPA waiver to the case at hand, Plaintiff's common law retaliatory discharge claim (Count II) must be dismissed, as Plaintiff has filed a CEPA claim. See, e.g., Bowen v. Parking Authority of the City of Camden, No. 00-5765, 2003 WL 22145814 (D. N.J. Sept 18, 2003) (CEPA waiver provision barred plaintiff's New Jersey Law Against

---

[2] Count IV requests declaratory relief and Counts V - VII concern damages and, thus, need not be addressed.

Discrimination retaliation claims); Colon v. Prudential Ins. Co. of America, No. A-4422-04T3, 2006 WL 507732 (N. J. Super. App. Div. Mar. 3, 2006) (employee's institution of CEPA action waived claim of discharge in violation of public policy).

Additionally, Plaintiff's claims concerning breach of contract and breach of the covenant of good faith and fair dealing (Count III) are also barred by the CEPA waiver as they require a finding of retaliatory discharge to demonstrate a breach by the Defendant; indeed, Count III is specifically entitled, "Wrongful Termination..." (Pl. Compl. at 7). See, e.g., Baldassare v. New Jersey, 250 F.3d 188 (3d Cir. 2001) (affirming district court's dismissal of plaintiff's state law claims because they "ar[o]se from the same set of facts surrounding his retaliation claim, and CEPA prohibits litigating duplicative claims").[3] Because Plaintiff's non-CEPA claims relate to the retaliatory discharge underlying his CEPA claim, and because his allegations do not go beyond the theory of retaliatory discharge, Plaintiff's remaining claims are barred by

---

[3]The types of claims that do not fall within the CEPA waiver are those that are independent of the retaliatory discharge theory. See, e.g., Casper v. Paine Webber Group, Inc., 787 F.Supp. 1480, 1509 (D. N.J. 1992) (allowing plaintiff's claim under the Equal Pay Act and the New Jersey Law Against Discrimination to proceed alongside plaintiff's CEPA claim because retaliatory discharge was not an element of proof required to support those claims); Flaherty v. The Enclave, 255 N.J. Super. 407, 413 (Law Div. 1992) (concluding that plaintiff's claim for pretermination compensation did not fall within the waiver).

the CEPA waiver provision.

Plaintiff also points out the controversy surrounding the phrase "institution of an action," the trigger of the CEPA waiver provision. The confusion concerning this phrase was spawned by the New Jersey Supreme Court's decision in <u>Young</u>, where the Court speculated that "'institution of an action' may be susceptible of meaning something other than the filing of a complaint... The meaning of 'institution of an action' could conceivably contemplate an election of remedies with restrictions in which the election is not considered to have been made until discovery is complete or the time of a pretrial conference..." <u>Young</u>, 141 N.J. at 32. Despite the Supreme Court's pondering of the timing and other issues concerning the CEPA waiver, the court emphasized that "[t]hose and other significant questions are not decided in this case." <u>Id.</u> at 33. Thus, the <u>Young</u> decision held "<u>only</u> that the Legislature did not intend the waiver provision to apply to causes of action that are substantially independent of the CEPA causes of action." <u>Id.</u> (emphasis added).

Acknowledging that the <u>Young</u> discussion of the waiver timing issue was merely the Supreme Court's musing, this Court looks to the CEPA waiver provision itself to answer the timing question. The language of this provision is clear and unambiguous: "the institution of an action in accordance with this act shall be deemed a waiver..." (N.J.S.A. 34:19-8). The plain meaning

14

cannot be denied – an action is "instituted" when a claim is filed. As the Flaherty court rationally concluded, "[t]here is no support for the position urged by plaintiff that an election can be made after the completion of discovery. ...the Legislature specifically directed that the plaintiff must make an election at the time the action is instituted." Flaherty, 255 N.J. Super. at 414.

Moreover, beyond the plain meaning of the provision, the word "institute" is also used in the statute of limitations section of CEPA to mean the filing of a claim: "Upon a violation of any of the provisions of this act, an aggrieved employee or former employee may, within one year, institute a civil action..." N.J.S.A. 34:19-5 (emphasis added). Interpreting the statutory provision pursuant to its clear and unambiguous meaning and consistent with the rest of the statute, this Court holds that the Plaintiff waived all other CEPA-related claims upon his filing of a claim under CEPA.

**CONCLUSION:**

For the aforementioned reasons, this Court holds that the Defendant's motion for summary judgment is denied in part and granted in part. Insofar as Plaintiff has alleged that he engaged in whistleblowing activity protected under CEPA, and in light of the fact that discovery has not been completed,

15

Defendant's motion for summary judgment concerning Plaintiff's CEPA claim (Count I) is denied.  Applying the CEPA waiver provision to Plaintiff's remaining claims, Defendant's motion for summary judgment concerning Counts II and III is granted.  An appropriate Order will issue this date.


Dated: <u>September 21, 2007</u>          <u>s/Renée Marie Bumb          </u>
                                          RENÉE MARIE BUMB
                                          UNITED STATES DISTRICT JUDGE